IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| M.G.W. a/k/a M.D.G., | : | |
| Plaintiff, | : | |
| v. | : | Case No. 5:22-cv-00273-CHW |
| COMMISSIONER OF SOCIAL SECURITY, | : | Social Security Appeal |
| Defendant. | : | |

**ORDER**

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff M.G.W. a/k/a M.D.G's application for disability benefits. The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, and as a result, any appeal from this judgment may be taken directly to the Eleventh Circuit Court of Appeals in the same manner as an appeal from any other judgment of the United States District Court. As discussed below, the ALJ appropriately reviewed the medical opinion and treatment record in this case, and the decision is supported by substantial evidence. The Commissioner's decision is **AFFIRMED**.

BACKGROUND

Plaintiff originally applied for Title II and Title XVI disability benefits in July 2010, alleging disability beginning on December 1, 2005, based on depression, anxiety, and injuries to her feet, hand, knee, and back. (Exs. 1A, 2A, 1D, 3D; *See, e.g.*, R. 575). Plaintiff first amended her onset date to January 1, 2010 (R. 172) and last amended her onset date to July 15, 2010. (R. 1155, 1247). Her date last insured (DLI) was December 31, 2014. (R. 1156). After Plaintiff's

1

applications were denied initially and on reconsideration at the state agency level of review (Exs. 1A, 2A, 3A, 4A), Plaintiff requested further review before an administrative law judge (ALJ).

Since her first application for benefits and request for review by an ALJ, Plaintiff's case has been before two ALJs on four separate occasions, all of which resulted in unfavorable decisions. The first unfavorable decision was issued on December 20, 2013 (Ex. 5A). The Appeals Council affirmed the ALJ's decision (Ex. 6A), but upon appealing to this Court, the case was remanded in June 2016. (Ex. 15A). Based upon this Court's remand, the Appeals Council remanded the case for re-hearing before an ALJ. (Ex. 16A). The remanded claim was consolidated with a second application that Plaintiff filed in April 2015. *See, e.g.*, (R. 1519). After a second hearing before the same ALJ, Plaintiff received another unfavorable decision on July 20, 2018. (Ex. 18A). The Appeals Council remanded her case with instructions that it be heard by a different ALJ. (Ex. 19A). The new ALJ held a third hearing and issued another unfavorable decision on December 12, 2019. (Ex. 20A). This decision acknowledged that medical records belonging to another claimant were erroneously entered into Plaintiff's file (Ex. 27F) and likely caused the previous remands. (R. 1568, 1582). Despite this acknowledgement, the RFC discussion in the third unfavorable decision still cited to misfiled records (R. 1576), which, in part, led to the Appeal Councils again remanding Plaintiff's case for another hearing. (Ex. 21A). The same ALJ held a telephonic hearing on October 15, 2021 (R. 1201-1240) and issued a fourth unfavorable opinion on December 8, 2021. (R. 1151-1200). Plaintiff's request for review of that decision by the Appeals Council was denied on June 27, 2022. (R. 1144-1150). The case is now ripe for judicial review. *See* 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the evidence preponderates against it.

**EVALUATION OF DISABILITY**

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can

perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## MEDICAL RECORD

The medical record covers treatment from 2006 through 2021. Plaintiff's appeal focuses on the ALJ's consideration of Dr. Jones, Dr. Brown, and Dr. Kwock's medical opinions. Although the summary in this section focuses on these opinions, the entirety of the medical record was reviewed in preparation of this opinion.

Plaintiff treated with Dr. Harvey Jones, her primary care physician, beginning in 2010. (Exs. 2F, 28F, 34F). As part of Plaintiff's disability application process, Dr. Jones provided a January 2014 medical source statement (Ex. 34F) and questionnaire. (Ex. 28F). Following a re-evaluation, he stated that Plaintiff was "totally disabled and not capable of any form of gainful employment" and that she had been disabled and not gainfully employed since 2010. (R. 2213-2214). Dr. Jones explained that Plaintiff suffered from chronic neck and back pain from degenerative disc disease, bulging disc disease, and arthritis. (R. 2213). Dr. Jones also noted that Plaintiff's need for psychiatric medications affected her functioning capabilities. (*Id.*)

Dr. Jones found Plaintiff's capabilities to be severely limited. For example, he limited Plaintiff to lifting and carrying no more than 5 pounds, sitting and standing for only a few minutes, walking about 100 feet, and not pulling or pushing. (*Id.*) Dr. Jones also stated that Plaintiff was unable to drive and was in constant pain. (*Id.*) Dr. Jones provided this statement in 2014 despite not having seen Plaintiff since May 2010. (R. 2214). He referenced Plaintiff's treatment with an orthopedic surgeon and suggested that this provider would also attest to Plaintiff's complete disability, but the statement does not reflect that Dr. Jones consulted with the surgeon or reviewed any of these records. *See* (R. 2214, 2216). Dr. Jones stated that Plaintiff's condition showed no

improvement in the three years since he had seen her. (R. 2215). He labeled her prognosis as poor. (R. 2216).

In his accompanying questionnaire, Dr. Jones listed Plaintiff's impairments as chronic neck and back pain, shoulder and knee arthritis, generalized anxiety, and major depression. (R. 1132-1133, 1135). He believed that Plaintiff was disabled by meeting the requirements of Listings 1.01 and 1.04.[1] (R. 1132). The questionnaire described Plaintiff as "totally disabled" since 2010 and similarly described Plaintiff's physical abilities as highly limited. (R. 1133-1136). Dr. Jones suggested that Plaintiff's disability should be considered permanent. (R. 1133). Dr. Jones also checked boxes which indicated Plaintiff would be limited to standing or walking less than 2 hours per workday and sitting less than 6 hours per workday. (R. 1135).

Dr. Crystal Brown also provided primary care treatment to Plaintiff beginning in 2012. (Exs. 21F, 29F, 36F, 37F, 42F, 44F, 46F, 48F, 49F, 58F). During the course of Plaintiff's treatment and disability applications, Dr. Brown provided three medical source statements or questionnaires. (Ex. 29F, 46F; R. 3691-3695). Agency reviewers also asked Dr. Brown to examine Plaintiff. (Ex. 37F).

In January 2014, Dr. Brown completed a questionnaire (Ex. 29F)in which she listed Plaintiff's impairments as chronic pain, joint pain, and pain on motion of joints. (R. 1138). Dr. Brown believed Plaintiff to meet the criteria of Listing 1.02.[2] (*Id*.) She noted that Plaintiff's disability began in 2012 and opined that Plaintiff would have limitations in walking, standing, lifting, carrying, pushing, pulling, lifting, stooping, bending, crawling, and climbing. (R. 1139). She further limited Plaintiff to lifting and carrying 10 pounds, standing less than 2 hours per

---

[1] Since Dr. Jones and Dr. Brown issued their opinions, the Listing impairments have been updated, including their numbers. The ALJ evaluated Plaintiff's condition under the musculoskeletal impairments category found under current Listing 1.01. *See* (R. 1158-1159).
[2] See Footnote 1 above.

5

workday, and sitting about 6 hours per day while alternating positions due to pain. (R. 1140-1141). Dr. Brown selected "never" for postural abilities, such as climbing, balancing, and kneeling, and related these limitations to Plaintiff's chronic knee pain and decreased range of motion. (R. 1141).

Dr. Brown saw Plaintiff in response to an agency request for a physical exam in November 2015. (Ex. 37F). The active problems listed at this visit were anxiety and hypertension. (R. 2346). The history section notes previous issues with chronic low back pain, which was aggravated by standing, walking, stooping, bending, and lifting, and with sciatica, bilateral knee pain, left foot pain, anxiety, and depression. (*Id*.) The report related Plaintiff's chronic emotional stress to her son's death. (R. 2347). Dr. Brown limited Plaintiff's functioning to standing and sitting no more than 5 minutes, lifting no more than 5 pounds, and no cooking or cleaning, but Dr. Brown found Plaintiff to have no difficulty with personal hygiene or managing her finances. (*Id*.) The notes state that Plaintiff used a cane or walker to assist with ambulation, but they also state that Plaintiff had no difficulty walking unassisted. (*Id*.) The physical examination indicated joint stiffness, decreased ability to concentrate, abdominal tenderness, abnormal cervical and thoracolumbar motion, knee pain, anxiety, and depression. (R. 2348-2350). Plaintiff's grip strength was normal, and no lower extremity weakness was noted. (R. 2349-2350, 2355). Plaintiff's gait was normal. (R. 2350, 2355). X-rays revealed chronic degenerative changes in both knees. (R. 2350, 2352). Dr. Brown assessed Plaintiff with anxiety, hypertension, abdominal pain, osteoarthritis in both knees, lumbar disc degeneration, and major depression. (R. 2350). Despite listing more restrictive limitations earlier in Plaintiff's historical notes, Dr. Brown's therapy plan limited Plaintiff to lifting more than 20 pounds occasionally, no repeated bending, and sitting two to six hours without breaks. She minimized Plaintiff's ability to interact with others, to adhere to a work schedule and production

norms, and to maintain concentration and attention. (R. 2351). Plaintiff's prognosis was fair. (R. 2351).

Dr. Brown completed another medical source statement in 2018. (Ex. 46F). She limited Plaintiff to lifting 10 pounds frequently and carrying 10 pounds occasionally. (R. 2621). She expected Plaintiff to be able to sit about 6 hours in a workday in one-hour intervals before needing a break. (R. 2622). She checked that Plaintiff medically required a cane and would need it to ambulate distances more than 100 feet. (*Id*.) Dr. Brown attributed this need to Plaintiff's bilateral knee pain, bilateral foot pain, and difficulty standing. (R. 2622). Dr. Brown opined that Plaintiff could never operate foot controls, climb, balance, stoop, kneel, crouch or crawl. (R. 2623-2624). She also suggested that she should never operate a motor vehicle. (R. 2625). She described Plaintiff's limitations as first being present in 2017. (R. 2626)

In June and July 2021, Dr. Brown wrote a letter and a completed medical source statement regarding Plaintiff's limitations. (Ex. 3691-3695). In the letter, Dr. Brown described Plaintiff as "disabled to work any employment due to residual stroke symptoms[3] and left knee replacement sequela." (R. 3690). Dr. Brown did not change the amount of weight which Plaintiff could lift, but she did alter the reasons for those limitations to address Plaintiff's post-stroke right hand weakness, knee replacement, knee swelling, and limping. (R. 3691). In this statement, Dr. Brown explained that Plaintiff could no longer shop, travel without assistance, ambulate without a wheelchair or walker, or use public transportation. (R. 3695). Plaintiff remained able to care for herself and fix simple meals. (*Id*.)

---

[3] The record indicates that Plaintiff suffered a stroke in September 2020. (R. 2875-2970).

7

A medical expert was also used in Plaintiff's case. Dr. John F. Kwock testified at the 2017 hearing.[4] (R. 1292-1390). In his opinion, the medical record supported diagnoses of thoracolumbar scoliosis, cervical and lumbar degenerative disc disease and degenerative joint disease, status-post arthroscopy in both knees, and osteoarthritis in both knees. (R. 1304). He opined that Plaintiff met no listing impairments. (R. 1304-1305). He explained that he had reviewed the extensive treatment record (R. 1305), and he did not believe that Dr. Brown and Dr. Jones's opinions about Plaintiff's disability and limitations were supported by the record. (R. 1306). Although he did not agree with the severity of those limitations, Dr. Kwock explained that the record did support some work environment protections for Plaintiff at a light work exertional level. (R. 1307). Dr. Kwock asserted that Plaintiff could frequently lift and carry 10 pounds and 20 pounds occasionally. (*Id*.) She can sit or walk for 6 hours an eight-hour workday. (*Id*.) He placed few limitations on Plaintiff's ability to climb, balance, stoop, kneel, crouch, and crawl. (*Id*.) Because the record showed no lower extremity weakness or equilibrium problems, Dr. Kwock did not find a cane or assistive device to be medically necessary. (R. 1307-1308). After the hearing, he reviewed supplemental treatment records, which did not change his opinion. (R. 1301-1302, Ex. 45F).

Plaintiff provided multiple function reports throughout her application period and testified at each hearing. In one of the earliest function reports (Ex. 2E), completed in 2010, Plaintiff explained that her pain made her anxious and that she moved from a recliner to the bed due to pain during the day. (R. 181). Her children were living with her, and she cared for them. (R. 182). Her

---

[4] Dr. Kwock was not recalled at the 2021 hearing because the ALJ determined "the complete case file [to be] legally sufficient to establish the nature and severity of the claimant's impairments." (R. 1155). The Commissioner interpreted Plaintiff's brief to challenge the procedure behind using Dr. Kwock as a medical expert. *See* (Doc. 10, p. 7-8). However, the Court does not interpret Plaintiff's argument in the same manner. While Plaintiff cites the HALLEX section regarding the use of medical experts, she only challenges the weight and consideration given to the medical expert opinion. (Doc. 9, p. 9). She makes no challenge to the manner in which his opinion was received into the record. *See* (*id*.)

children had to help her get out of the bed, her knees regularly swelled, and her feet throbbed throughout the day. (R. 188). She experienced difficulties bending and sitting in places like the bathtub. (R. 182). She was able to cook small meals each day, but she was limited by her ability to stand. (R. 183). She was able to drive, but her sons usually went with her when she went out. (R. 184). When grocery shopping, she used a motorized cart. (*Id.*) Plaintiff limited her abilities to lift, squat, bend, stand, reach, walk, sit, kneel, climb, remember, understand, concentrate, and get along with others. (R. 185-186). She further limited her ability to walk only about 50 yards before needing to take a break. (*Id.*) Plaintiff stated that she needed a cane and brace, but only the brace had been prescribed by a doctor. (R. 187).

At the October 2013 hearing, Plaintiff explained that she was unable to work due to problems with her knees, hands, and back. (R. 47). She experienced sharp pain in her back that radiated to her left leg with numbness in her fingers. (R. 48). Standing, bending, and walking long distances made the pain worse. (*Id.*) She could only sit for ten to fifteen minutes or stand for five minutes. (*Id.*) She explained that she spent most of the day sleeping after taking her pain medications, which make her drowsy. (R. 47-48). She had received injections in her knees and back, and physical therapy had been unsuccessful. (R. 49). At the hearing, she walked with a cane, but she could not recall who had prescribed it. (R. 49-50). Her sons assisted her with meal preparation, laundry, and household chores. (R. 54-55). Plaintiff testified that she did not drive herself to appointments because of the medication she takes. (R. 56-57).

At the fourth hearing before the ALJ held on October 15, 2021, Plaintiff stated that she was using a rolling walker and cane to get around. (R. 1213). She uses the walker for greater support and described having unsteadiness and weakness when walking. (*Id.*) She started using a cane in 2005 and the walker about four years prior to the hearing and knee replacement surgery. (*Id.*)

9

Plaintiff disclosed having a stroke in September 2020 and discussed the physical therapy that followed. (R.1214-1215). Because of the stroke, Plaintiff limited her ability to lift and carry to two to five pounds. (R. 1215). Plaintiff also discussed the abdominal surgery in 2018, which left her with a severely infected incision requiring hospitalization. (R. 1218-1220). Arthritis in her hands caused stiffness and pain. (R. 1223-1224).

She described being able to sit 30-40 minutes before her back starts hurting and needing to rest. (*Id.*) She spends her days mostly watching TV, and she tries to do small tasks around the house as she is able. (R. 1217). At this hearing, she was living by herself, running short errands, and reheating or making easy meals. (R. 1215-1216). A neighbor may take her for errands because she no longer owned a vehicle. (R. 1216). She had driven as late as the month prior to the hearing to Dr. Brown's office. (*Id.*)

## DISABILITY EVALUATION

Following the five-step sequential evaluation process, the reviewing ALJ made the following findings in this case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 15, 2010, the amended alleged onset date. (R. 1157). Plaintiff's date last insured was December 31, 2014. (*Id.*) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: neuritis; osteoarthritis and related disorders, such as bursitis and chondromalacia; obesity; hypertension; bronchitis; asthma; mild cerebral vascular accident residuals; depressed mood; schizophrenia; anxiety; PTSD; chronic pain syndrome; skin scarring; and polypharmacy. (R. 1158). He also found that Plaintiff suffered from acute tachycardia, acute hypotension, cellulitis, acute syncope/vertigo, esophageal reflux, hypokalemia, upper respiratory infection/rhinitis, urinary tract infections, constipation, fatty liver, dental caries, orbital fracture, torticollis, keloid, hemorrhoids, alopecia, ulcers, abnormal dental condition, acute

wound abscess, thyroid nodule, pulpitis, ovarian cyst, breast mass, muscle strain, genu valgus, bunions, lipomas, mild cardiomegaly, high cholesterol, conjunctivitis, vitamin-B12 deficiency, and insomnia, but found that these impairments were non-severe. (*Id*.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling the severity of one of the listed impairments. (R. 1158-1160). Therefore, the ALJ assessed Plaintiff's RFC and determined that Plaintiff could perform light work, with the following limitations:

- [Plaintiff] can lift carry up to 20 lbs. occasionally and up to 10 lbs. frequently
- She can stand/walk up to 4 hours and sit up to 6 hours in a workday with the usual breaks
- She can occasionally perform postures of climbing ramps or stair, balancing, stooping, crouching, crawling or kneeling but should never climb ladders, ropes or scaffolds or have similar hazard exposure;
- She can frequently push/pull with her upper/lower extremities, and she can frequently finger and handle, but should only occasionally reach overhead;
- She can have occasional atmospheric exposure to such as dust or smoke;
- She should have no concentrated exposure to vibration;
- She can perform simple tasks with no production rate pace of assembly line work;
- She can have occasional, brief and superficial social interaction (as defined at hearing) with co-workers, supervisors, and the public; and
- She may alternate sitting/standing for 5-minutes at 30-minute intervals while remaining on task.

(R. 1160-1161).

Based on this RFC, the ALJ found at step four that Plaintiff is not capable of performing any past relevant work. (R. 1183). Pursuant to step five, the ALJ determined that there are jobs existing which Plaintiff can perform at both light and sedentary exertion: final inspector, sorter,

addresser, waxer, and touchup screener. (R. 1183-1184). As a result, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act at any time from July 15, 2010, through the date of the decision. (R. 1185).

## ANALYSIS

Plaintiff argues that the light work RFC determined by the ALJ is not supported by substantial evidence because the ALJ did not properly apply the treating physician rule to the medical records and opinions of Dr. Jones, Dr. Brown, and Dr. Kwock. (Doc. 9). As discussed below, the ALJ applied the correct legal standards, thoroughly considered the record, and clearly articulated his opinion. Therefore, the RFC is supported by substantial evidence.

1. <u>The ALJ appropriately applied the treating physician rule</u>.

Plaintiff argues that the ALJ incorrectly considered the opinions and records of Dr. Brown, and Dr. Jones, Plaintiff's treating physicians, and the opinion of the medical expert, Dr. Kwock. Plaintiff asserts that there was no good cause to discount Dr. Brown and Dr. Jones's opinions, which directly conflict with a light work RFC. Plaintiff's argument is based upon the ALJ's failure to apply 20 C.F.R. §§ 404.1527 and 416.927[5] and the treating physician rule. Despite Plaintiff's arguments to the contrary, the record shows that the ALJ appropriately applied the correct legal standards when considering Plaintiff's treating physician opinions and records and adequately explained the reasons for discrediting them. There is no error in how the ALJ considered the medical expert opinion. Substantial evidence supports the decision.

---

[5] On March 27, 2017, the Social Security Administration revised the regulations regarding medical opinions from a claimant's treating sources. The regulations now specify that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Because Plaintiff's application was filed in July 2010, the prior regulations apply.

The treating physician rule is well-established and applies to Plaintiff's case. Opinions of treating physicians are entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause may be established when "(1) treating physician's opinion is not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. To disregard or discredit the opinion of a treating physician, the ALJ must clearly articulate the reasons. *Id*. Additionally in evaluating Plaintiff symptoms, "[i]f the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Plaintiff takes issue with how the ALJ evaluated the opinions of Dr. Jones, Dr. Brown, and Dr. Kwock and argues that the ALJ would have assigned a sedentary or sub-sedentary RFC to Plaintiff had he appropriately considered them.

The ALJ first discussed Dr. Brown's 2014 questionnaire in the context of Dr. Brown's own records, the other evidence in the record, and Plaintiff's subjective symptoms. He summarized Dr. Brown's January 2014 opinion and contemporaneous treatment notes. (R. 1169). During this portion of the decision, the ALJ also acknowledged Dr. Jones's 2014 questionnaire and his opinion that Plaintiff was completely disabled and had been since 2010. (*Id*.) The ALJ found Dr. Jones's "functional capacity opinions [were] unsupported by his own record and inconsistent with other medical evidence…and with the claimant's self-reported daily activities." (*Id*.) The ALJ then considered Dr. Jones's questionnaire in conjunction with Dr. Brown's opinion before "afford[ing] more weight to the other evidence, which demonstrates [that Plaintiff] is not so limited." (R. 1169-1170). The ALJ likewise explained why he discounted the opinions that Plaintiff met any musculoskeletal listings at the time the opinions were drafted, based not only on Dr. Brown's

records but also on Plaintiff's contemporaneous other treatment. (R. 1170). As the ALJ noted, Dr. Jones could not be recontacted for an updated opinion. (R. 1169, n. 1).

Plaintiff asserts that the opinion of Dr. Jones, as a treating physician, "is entitled to controlling weight absent findings to the contrary" and that "it cannot be harmless error for the opinion [of Dr. Jones] to be ignored." (Doc. 9, p. 9). The ALJ had good reason, however, not to assign controlling weight to the opinion of Dr. Jones. One good reason not to assign controlling weight is the gap in Plaintiff's treatment with Dr. Jones, which Dr. Jones himself admitted in his 2014 re-evaluation by noting that he not seen Plaintiff in nearly four years. *See* (R. 2214). This long gap in treatment undermines the close treating relationship that provides the basis for giving treating physicians controlling weight. Moreover, the ALJ looked beyond the gap in treatment and, contrary to Plaintiff's argument, did not ignore the records and opinion of Dr. Jones. Instead, the ALJ considered the opinion in context of the entire record and other contemporaneous treatment before assigning it less relevant weight. As such, the ALJ adequately explained the "good cause" not to assign it controlling weight as contemplated by *Phillips*.

The ALJ summarized the intervening medical record before turning to the November 2015 evaluation that Dr. Brown conducted at the agency's request. (R. 1171). He acknowledged the clinical findings at this examination and compared them to claimant's description of her abilities. (*Id.*) The ALJ "afford[ed] significant weight to Dr. Brown's findings/opinions" while giving Plaintiff's "description of her level of functioning to Dr. Brown…less weight because neither clinical findings nor her daily activities indicate disabling symptoms/limitations as she alleges." (*Id.*) The ALJ did not give Dr. Brown's opinions the highest weight because he found them to be inconsistent with the record. (*Id.*)

14

The ALJ continued summarizing the intervening medical record before turning to Dr. Kwock's opinion from the 2017 hearing. (R. 1172-1175). Dr. Kwock reviewed the records and opinions of Dr. Brown and Dr. Jones and disagreed with their assessment that Plaintiff met a listing impairment or was totally disabled. The ALJ acknowledged that Plaintiff, through her attorney, challenged Dr. Kwock's opinion, but the ALJ found these arguments unavailing based upon the entire record. (R. 1174-1175). Plaintiff argues that Dr. Kwock's opinion is not supported by the record as a whole and that the opinion therefore should be given only limited weight. (Doc. 9, p. 10). Plaintiff attempts to support her challenge by arguing that Dr. Kwock incorrectly overlooked or denied the existence of any radiological films showing Plaintiff's herniated disc. (*Id.*, R. 615-616, 2532). Plaintiff cites to a 2012 CT of Plaintiff's lumbar spine to show a disc herniation at L5-S1 (R. 615-616) and a lumbar spine 2016 MRI showing mild disc ridging throughout the back. (R. 2532).

This argument mischaracterizes Dr. Kwock's testimony. When Dr. Kwock was asked about disc herniation in Plaintiff's lumbar spine, he correctly recounted the results of Plaintiff's 2016 MRI and explained why the results were inconsistent with a disc rupture or herniation. (R. 1319). He was not asked about the earlier 2012 CT, and the 2016 MRI did not note any findings at L5-S1, as noted in the 2012 CT scan for purposes of comparison. *See* (R. 2532). Throughout his testimony, Dr. Kwock acknowledged the degenerative changes documented in the treatment record. He did not expressly deny the evidence as Plaintiff suggests, and he acknowledged that Plaintiff's impairments supported some functional limitations.

The ALJ summarized the remaining medical record before turning to Dr. Brown's final medical source statement from 2021. (R. 1175-1180). The ALJ found that the limitations stated in the 2021 questionnaire (Ex. 58F) were not supported by the record or by Dr. Brown's own records.

(R. 1180). The ALJ afforded "more weight to clinical findings and other medical opinions throughout the record" than Dr. Brown's opinions about Plaintiff's functional capacity. (*Id.*)

Plaintiff disagrees with the ALJ's assessment of Dr. Brown's opinions and his discussion of the medical record. However, weighing the medical opinion against the complete record is not only permissible but appropriate, even under the treating physician rule. As with Dr. Jones's opinion, the ALJ found not only that the record as a whole failed to support the limitations described by Dr. Brown throughout Plaintiff's application period and treatment, but also that Dr. Brown's opinions were unsupported by her own records.

Under the substantial evidence standard of review, the Court cannot say that the ALJ incorrectly weighed the opinions of Dr. Brown. The functional limitations between the opinions are not consistent with each other, and they do not paint a picture of a disabled claimant who has been incapable of work since 2012 as Dr. Brown opined. For example, in January 2014, Dr. Brown limited Plaintiff, whom she described as disabled since 2012, to lifting and carrying 10 pounds, standing less than 2 hours per workday, and sitting about 6 hours per day while alternating positions due to pain. (R. 1140-1141). The 2018 and 2021 medical source statements included similar lifting limitations (R. 2622, 3691), except that in the 2018 statement Dr. Brown dated these limitations as first presenting in 2017. (R. 2626). At the 2015 exam completed at the agency's request, Dr. Brown's history notes severely limited Plaintiff to lifting and carrying 5 pounds. (R. 2347). The "therapy plan" portion of the examination, however, limited Plaintiff to lifting no more than 20 pounds occasionally. (R. 2351).

Upon review of the Dr. Brown's opinions compared to her treatment notes, the ALJ highlighted perhaps the most notable inconsistency between Dr. Brown's assessed limitations and her treatment notes – regarding Plaintiff's cane usage. *See, e.g.*, (R. 1176). Dr. Brown's medical

16

opinions all note that Plaintiff uses a cane or other ambulatory device, but her records do not consistently support that limitation. Some office visits reflect that Plaintiff used a cane or other device (R. 2287, 2291, 2302, 3717), and other visits note Plaintiff walked with a limp (R. 3746, 3752, 3768, 3773-3774, 3779). Others make no mention of cane usage at all, including an April 2021 pre-op exam. S*ee, e.g.*, (R. 3728-3865). Some visits were silent about Plaintiff's gait. *See, e.g.*, (R. 2306-2308, 2804). There are also several visits in which Plaintiff used a cane, yet notes simultaneously indicate that Plaintiff had "no difficulty walking unassisted." *See, e.g.*, (R. 3751, 3766, 3772, 3777). These are not the only inconsistencies noted by the ALJ, but this example and the others discussed by the ALJ establish a basis not to assign controlling weight to Dr. Brown's opinions or to accept the severe limitations that Dr. Brown assessed as to Plaintiff's functional abilities.

Even though Plaintiff disagrees with the ALJ's interpretation of the record, the Court cannot find that the ALJ misrepresented any portion of it. The decision indicates that the ALJ considered the entire record. His discussion of the record was thorough and provided the appropriate clarity regarding his reasoning. A finding that an opinion is inconsistent with the treatment record and the physician's own notes provides good cause for not giving a treating physician's opinion substantial or controlling weight. *Phillips*, 357 F.3d at 1240. Accepting Plaintiff's invitation to find that the ALJ inappropriately discounted the opinions of Dr. Jones and Dr. Brown would lead to this Court supplementing its judgment for the ALJ, which is specifically disallowed. *Winschel*, 631 F.3d at 1178.

Plaintiff further suggests that, had the ALJ not discounted the treating physician opinion, he would have found Plaintiff capable of a sedentary or sub-sedentary RFC. This argument would lead to a treating physician establishing an RFC instead of the ALJ developing it after considering

the overall record, which regulations disallow. *See* 20 C.FR. §§ 404.1546(c) and 416.946(c) (stating that the ALJ has the responsibility to assess the RFC). The ALJ appropriately considered the record in this case. Therefore, the RFC is supported by substantial evidence.

## CONCLUSION

Based on the foregoing, it is **ORDERED** that the Commissioner's decision be **AFFIRMED**.

**SO ORDERED**, this 21st day of August, 2023.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge